CHARLES HOLTOQUIST *vs.* SIMON CLARK *et al.*

Argued Oct. 30, 1894. Reversed Nov. 8, 1894.

No. 8834.

**Delay in filing an assignment of an insolvent debtor.**

An instrument of assignment in proper form, under the insolvency laws of this state, was subscribed by the debtor, duly acknowledged, the certificate of acknowledgment indorsed thereon, the assignee named therein, in whose possession it was left by the assignor, with instructions to the assignee to file it in the clerk's office, if certain creditors should commence suits against the debtor, and thereby undertake to obtain preferences, which suits were so commenced, and thereupon said assignee filed said assignment in the clerk's office, about two months after the date and signing of such assignment. *Held*, that said assignment was not invalid by reason of the manner of its execution, nor the delay in filing the same.

**Refusal of assignee to accept the trust, does not vitiate the assign--ment.**

An assignee, after filing an instrument of assignment, refused to accept the trust, and was removed by the court, and another appointed, who accepted the trust, and duly qualified. *Held*, that the court obtained jurisdiction over the assignor, and over the property described in the assignment, so far at least as to protect it, and see that it was applied· to the purpose for which·it was. intended by the assignor. *Held*, further, that, the assignee having refused to accept the trust after filing the assignment, the trust did not fail for want of a trustee, and that the creditors' rights should be protected by the appointment of another assignee.

**Attacking the assignment in a collateral proceeding.**

Where the assignment in insolvency proceedings is valid upon its face, it cannot be attacked in a collateral proceeding.

Appeal by defendants, Simon Clark, William A. Cant and Robert F. Fitzgerald, from an order of the District Court of St. Louis County, *S. H. Moer*, J., made March 10, 1894, denying their motion for a new trial.

On February 15, 1893, Simon Clark, Alexander M. Morrison and Joseph J. Thatcher were partners in grocery trade at Duluth under the firm name of Simon Clark & Co. Clark owned individually a large amount of real estate situated in St. Louis county and was financially embarrassed. On that day he executed and acknowledged an assignment of all his unexempt property under Laws 1881, ch. 148, and its amendments, to William A. Cant, in trust for the equal benefit of all his creditors and directed Cant to file it in the office of the clerk of the District Court whenever necessary to prevent any creditor from obtaining a preference over others and meantime to withhold it. The next day Clark departed for Europe to obtain funds with which to pay all his debts. He returned unsuccessful on April 16, 1893. Meantime, actions had been commenced against him and his partners in the grocery trade. On April 13, 1893, his partners made an assignment under said statute to Robert F. Fitzgerald and on the same day Cant filed Clark's assignment with the clerk and a certified copy with the Register of Deeds, but did not execute his acceptance of the trust until April 18, 1893. This acceptance was not filed with the clerk until April 22, 1893. He never executed a bond, but on April 24, 1893, exe-

cuted and filed his resignation of the trust and on the same day the District Court made an *ex parte* order accepting Cant's resignation and appointing Robert F. Fitzgerald in his place, transferring to Fitzgerald the assigned estate and consolidating the proceedings under the two assignments. Fitzgerald accepted the trust, gave bond and entered upon the discharge of his duties.

On April 17, 1893, the plaintiff, Charles Holtoquist, recovered judgment against Clark in the District Court of St. Louis county for $3,084.83 upon contract and it was duly docketed that day. His complaint had been filed in that court more than twenty days. On June 2, 1893, a writ of execution was issued upon the judgment and delivered to the sheriff for service. He levied thereunder upon the real estate which Clark owned at the date of his assignment and advertised it for sale. On August 19, 1893, the sheriff sold it under the writ at public auction to the plaintiff who received a certificate of sale which he caused to be recorded. On October 7, 1893, he commenced this action stating these facts and praying judgment that the certificate of sale is a valid lien and incumbrance on the real estate sold and that as to plaintiff the assignment of Clark is void and of no effect. The defendants answered and the issues were tried January 17, 1894. The court made findings and ordered judgment for plaintiff as prayed. Defendants moved for a new trial. Being denied they appeal.

*Wm. A. Cant,* and *Walter Ayers,* for appellants.

The filing of the instrument of assignment and not its date is the inception of the proceedings under it. *Kingman* v. *Barton,* 24 Minn. 295; *Swart* v. *Thomas,* 26 Minn. 141; *Simon* v. *Mann,* 33 Minn. 412; *Second Nat. Bank* v. *Schranck,* 43 Minn. 38.

A considerable interval may and frequently does elapse between the date of the instrument and the date when it takes effect by filing. *Fairbanks* v. *Whitney,* 36 Minn. 305; *Smith* v. *Bean,* 46 Minn. 138; *Wadleigh* v. *Merkle,* 57 Wis. 517; *McKibbin* v. *Ellingson,* 58 Minn. 205; *McIlhargy* v. *Chambers,* 51 Hun, 332.

Plaintiff's argument as to constructive fraud is based on the rule applicable to common law assignments only. That rule prevails in New York from which state he cites his authorities. There fraud avoids the assignment. Burrill, Assignment (5th Ed.) § 337. The

rule in Minnesota corresponded with that in New York until our insolvency law of 1881 was adopted. *Bennett* v. *Ellison,* 23 Minn. 242.

But under our law of 1881 the rule is entirely changed. Fraud on the part of the assignee or assignor, or both, has no effect on the assignment. *In re Mann,* 32 Minn. 60; *Bennett* v. *Denny,* 33 Minn. 530.

The clause in the instrument referring to property to be thereafter acquired by the debtor up to the date of the filing of the instrument does not affect its validity.

*J. L. Washburn,* for respondent.

The assignment in this case can have no validity except under the insolvent law of 1881, and amendatory acts. It contains a provision for releases. Its character must be determined upon its face. *In re Bird,* 39 Minn. 520; *May* v. *Walker,* 35 Minn. 194; *McConnell* v. *Rakness,* 41 Minn. 3; *Second Nat. Bank* v. *Schranck,* 43 Minn. 38; *Ide* v. *Harwood,* 30 Minn. 191.

The only assignment which the law authorizes an insolvent debtor to make, is one which without reservation and without prolonged delay assigns all of the debtor's unexempt property which he had at the time of the execution of the assignment. *Bennett* v. *Ellison,* 23 Minn. 252; *Thompson* v. *Winona Harvester Works,* 41 Minn. 437; *In re Allen,* 41 Minn. 430.

The assignment in this case was not filed or dealt with in a manner to bring all of the unexempt property of the debtor under subjection of the court for the benefit of his creditors. It was not intended that his property should be thereby brought at once under the subjection of the court. If the conditions then existed to warrant the assignment, it was clearly his duty to assign at once. His intention not to do so was evinced both from the face of the instrument and from the evidence showing how the parties acted with regard to it. The peculiar and guarded phraseology of the additional clause written into the assignment is significant. It indicates that it was not his intention to file the instrument at once, or that it should operate upon any property except such as he might have when the instrument should be filed.

Whatever lapse of time may be permitted between the making and filing of an assignment is indulged in obedience to the principle that the debtor attempting in good faith to place his property in *custodia legis* for the benefit of his creditors is allowed whatever time may be reasonably necessary under the circumstances to comply with the statutory provisions to bring his property under subjection of the law for that purpose, and it is limited to that.

If the debtor was not insolvent when he executed the so-called assignment, he could not make it.  It does not appear that Clark was insolvent when he executed the instrument in question.  On the contrary, it appears that he was not.  His business proceeded as before and every presumption of solvency obtains.

There must be an actual, unconditional delivery and intent to make the assignment.  But there was no delivery.  Cant was an attorney at law and was the attorney for Clark.  The assignment in his possession was in Clark's possession.  At common law fraud vitiated the assignment.  Under our insolvency law an instrument that works fraud upon the creditors is void, but mere fraudulent intent, the instrument being otherwise regular and capable of being administered in harmony with the law, will not vitiate it.  The delivery must be absolute and such as to deprive the assignor of power to recall the deed, otherwise it is void.  Nothing should be left to the discretion or future control of the assignor.  These matters can all be shown as well by parol in a direct attack as though appearing upon the face of the instrument, and thus shown, are equally fatal to its validity.  *Van Hook* v. *Walton*, 28 Tex. 59; *Brevard* v. *Neely*, 2 Sneed, 164; *Reichenbach* v. *Winkhaus*, 67 How. Pr. 512; *Gasherie* v. *Apple*, 14 Abb. Pr. 64; *Wadleigh* v. *Merkle*, 57 Wis. 517; *Pierson* v. *Manning*, 2 Mich. 445; *Dunham* v. *Waterman*, 17 N. Y. 9; Burrill, Assignments, § 258.

BUCK, J.  On the 17th day of April, 1893, the plaintiff recovered a judgment against the defendant Simon Clark and one Andrew Jackson in the District Court of St. Louis county for the sum of $3,048.83.  On the 15th day of February, 1893, Simon Clark executed an assignment of his property in form substantially as is usually done under Laws 1881, ch. 148, and its amendments, containing a clause, however, in addition to the usual one of a present

conveyance of his property, as follows: "This conveyance shall cover and include all property, of every nature and kind whatsoever, held or owned by me at the time this instrument may be filed in the office of the clerk of the District Court for the eleventh judicial district in and for the county of St. Louis and state of Minnesota, except such property as is by law exempt from levy and sale on execution." This assignment named as the assignee one William A. Cant, of Duluth, who was one of the attorneys for the defendant Clark; and it was left with or delivered to him by Clark on the day of its date. The said Clark on the same day departed for Europe, for the purpose, as it appears, of raising money to pay his creditors, and discharge all of his obligations, if he succeeded in raising money enough to avoid the necessity of making an assignment, he being then financially embarrassed. He returned from Europe to Duluth April 16, 1893.

On the 13th day of April, 1893, the assignee named in the assignment filed it in the office of the clerk of the District Court of St. Louis county, and the clerk duly certified to such filing on the instrument itself. The assignee Cant resigned his trust as such assignee, which resignation was dated April 22, 1893, and filed in the office of the clerk of the District Court of St. Louis county, April 24, 1893. Prior to his resignation, one Robert F. Fitzgerald, who is named as one of the defendants herein, had been appointed as assignee of Alexander M. Morrison and Joseph J. Thatcher, copartners of said Clark, who had made an assignment, the said Cant believing that a more expeditious and economical settlement of the affairs of said firm, and of the various members thereof, might be had if Mr. Fitzgerald should act for all of the assignors. The court accepted Mr. Cant's resignation, and appointed Mr. Fitzgerald as his successor, and consolidated the proceedings of the different parties. Mr. Fitzgerald accepted the trust. Mr. Cant did not execute or file a bond as the assignee of Simon Clark, but Mr. Fitzgerald duly qualified as such assignee, and entered upon the discharge of his duties immediately after the resignation of Mr. Cant.

At the time of the signing and delivery to Mr. Cant of the assignment by Mr. Clark, on the 15th day of February, 1893, and until the filing of the same, he owned a large amount of real estate; and from February 15, 1893, until about the 11th day of March, the

partnership business of which Mr. Clark was a copartner was carried on by his partners as usual; and at the latter date the creditors of the firm appointed an agent, who took charge of and conducted the partnership business until April 13, 1893. This plaintiff, considering the insolvency proceedings void, caused an execution to be issued out of and under the seal of the District Court of St. Louis county upon his judgment against Jackson and Clark, and sold the real estate owned by said Clark at the date of his instrument of assignment and at the time of filing the same, which property was bid off by plaintiff upon said execution sale; and he claims that the lien of said judgment was and is prior to the right or interest transferred by said assignment of said Clark and the insolvency proceedings thereunder. A schedule of the assigned property was duly filed by Clark within the time required by law, and a certified copy of the assignment was filed in the office of the register of deeds of the said county of St. Louis. At the time of the signing and delivery of the assignment to Mr. Cant, on leaving the same with him by Mr. Clark, he stated to and instructed Mr. Cant to hold the assignment; and, if any steps were taken by his creditors to enforce payment against him in his absence, so that they would secure preferences, through suits or otherwise, then Mr. Cant should file the assignment and prevent such preferences. During his absence seven or eight suits were commenced against Mr. Clark, and one creditor was about to obtain a preference when Mr. Cant filed the assignment, as directed by the defendant Clark. There was no personal property of any consequence which came into the hands of the assignee.

The contest is between the plaintiff, claiming that the assignment was void, and the assignee Fitzgerald, claiming that the property was transferred to him by the insolvency proceedings. Under our insolvency laws, "whenever any debtor shall have become insolvent, * * * he may make an assignment of all his unexempt property for the equal benefit of all his *bona fide* creditors, who shall file releases of their demands against such debtor as herein provided; such an assignment shall be made, acknowledged and filed, in accordance with and be governed by the laws of the state relating to assignments by debtors for the benefit of creditors."

It is further provided that "such conveyance or assignment shall

be void unless it be in writing subscribed by such debtor or debtors and duly acknowledged before an officer authorized to take acknowledgments of deeds and the certificate of such acknowledgment be endorsed thereon; and until such conveyance or assignment be filed in the office of the clerk of the District Court in and for the county wherein such debtors reside, or wherein the business in reference to which the same is made has been principally carried on."

It will be seen that the requisites for a completed assignment are that the assignment must be in writing, subscribed by the debtor, duly acknowledged, the certificate of such acknowledgment indorsed thereon, and the instrument filed in the office of the clerk of the District Court. It is not denied that all of these things were complied with on the part of the defendant Clark. The main point of attack upon the assignment proceedings is that the instrument of assignment was never delivered, and, therefore, that it is null and void. Just what constitutes the delivery of a written instrument is sometimes a question of great difficulty. Here the question is, when was the instrument of assignment fully completed, so as to become operative in law, if it sprung into life at all? Under the insolvency laws of this state, as we have stated, there are certain things or formalities which must be done towards the final completion of the assignment. It is true that the statute declares the assignment void until all these formalities have been complied with. But they cannot all be done at one moment. The written subscription, acknowledgment, certificate, and filing are separate steps in the proceeding, and it is a physical impossibility for all of them to be made instantly. The statute declares that the assignment shall be void until certain things are fully performed, but it certainly does not mean that each step is an absolute nullity; so that, when all combined are duly performed and completed, they cannot become operative. The filing of the assignment is the last step, so far as the written instrument is concerned, to make the assignment complete. Now, when must this final act in the completion of the assignment be performed? Upon this subject the statute is silent. It is true that it provides "that every debtor so making an assignment shall, at the date thereof or within ten days thereafter, make and file with the clerk of the court aforesaid a just and true statement or inventory under oath." This does not mean at the date of

the written instrument of assignment, but at the date when the assignment is fully executed by filing the same with the proper clerk of the District Court. In this case the assignor Clark made and filed the inventory within the ten days next after the filing of the written instrument of assignment.

The length of time that elapsed between the date of the instrument, February 15, 1893, when it was left with or delivered to the assignee Cant by Clark, and the time of filing the same by the assignee in the clerk's office, viz. April 13, 1893, cannot be said, as a matter of law, to invalidate the assignment. Suppose that the assignor Clark had retained this instrument fully executed except the filing, and then filed it himself in the clerk's office at the time that it was actually filed by Cant; would it not then have become operative and valid? If not, what would render it void? There is generally a greater or less period of time between the signing and the filing of the written instrument of assignment. Would a day or a few days invalidate it? If not, how does two months' delay render it void? There is no fraud in the case, and no facts appear upon which to predicate a charge of fraud against either Clark, Cant, or any other party defendant. There was an honest struggle and effort upon the part of Clark to so arrange his business as to pay all of his creditors in full, and, if not able to do so, then that his assets should go to pay his creditors *pro rata*, and without preferences. This was in strict keeping with the letter and intent of the insolvency law itself. It is true that his business was carried on while he was absent in Europe, but there is not a word of testimony that during this time a single dollar of his property was used in any manner to defraud his creditors. On the contrary, on the 11th day of March, 1893, his creditors appointed an agent, who took possession of Clark's store business, and conducted the same, and received the proceeds thereof, until his return home, April 16, 1893; and he never transferred any of his real estate after February 15, 1893, unless by operation of law under his assignment.

There is therefore no badge of fraud to be discovered in the acts of the defendant Clark. If, as claimed by respondent's counsel, a solvent party could carry an assignment around for years, and file it when he became insolvent, if this assignment is sustained, we say that creditors could proceed against him forthwith upon their

debts maturing, and obtain their judgments within the short time allowed by law, or compel him to make a lawful assignment; and, if he was not insolvent, that question could be judicially determined upon the proper hearing, although it is not necessary for us to determine just how long a time might elapse between the date of the instrument of assignment and the date of filing the same, and what evidence of solvency might make a proceeding under such circumstances void or not.

We are of the opinion that in this case the assignment was not void because of the failure of the assignor to file it, or cause it to be filed, when it appears to have been done. Whether he filed it himself, or caused it to be done by another, is of no consequence.

Upon the question of leaving with or delivering to Cant the instrument of assignment, we think the evidence fully justifies us in saying that it was not left with the assignee to be filed or not, in his discretion, or that the act of so doing should rest in the judgment of the assignee.

Whether the physical act by which the assignee became possessed of the writtten instrument of assignment is called a delivery or a mere leaving it with him is quite immaterial. He took it and received it from the assignor as one step towards the completion of the assignment, with instructions to keep it, and if certain creditors should bring suits against him, and undertake to obtain preferences over other creditors, that then the instrument of assignment should be filed in the clerk's office. Whether he should file it or not if such a state of facts should present themselves to him was not left to his discretion, but the instructions were absolute and imperative. This condition of affairs did actually arise, and seven or eight creditors did actually commence suits against him in his absence, and were about to obtain preferences against other creditors when the assignee filed the assignment in the clerk's office, as he had been instructed to do. If, upon doing this act of filing, the absolute title did not pass to the assignee until he filed his bond, the court at least got jurisdiction over the assignor and over the property, so far at least as to protect it, and see that it was applied to the purpose for which it was intended by the assignor, and in the manner provided by law. The assignee did not file a bond, nor qualify, as required by law, although he did not refuse to do so until after he

had filed the assignment; he well knowing at the time of such filing, and for a long time prior thereto, he had been named by the assignor in the assignment as such assignee. We are of the opinion that, under such a state of facts, the trust should not, and did not, fail for want of a trustee for the time being. This instrument, so filed, was for the use and benefit of the creditors, as well as of the assignor, and their rights should not be lost or jeopardized by the refusal of the assignee to act or execute the trust. The defendant Fitzgerald was appointed assignee in place of Mr. Cant, who declined to act.

It is further claimed by the respondent that it does not appear that Simon Clark was insolvent at the date of the assignment, or at the time of filing the same.

It does appear, however, that he was financially embarrassed; that seven or eight of his creditors had commenced suits against him; that they had taken possession of his business, and appointed an agent to carry it on, who took possession of the proceeds of such business, and appropriated them towards the payment of their debts. But if the assignment was valid upon its face, and apparently well founded, the plaintiff cannot attack the assignment proceedings in this collateral manner. *Second National Bank* v. *Schranck*, 43 Minn. 38, (44 N. W. 524.) Was the assignment apparently valid upon its face? It is criticised by counsel for respondent, because it contained the words: "This conveyance shall cover and include all of the property, of every nature and kind whatsoever, held or owned by me at the time this instrument is filed in the office of the clerk of the District Court." We are of the opinion that this does not affect the validity of the instrument. It also contained the usual clause of such instruments conveying all the property which the assignor had at the time of the date of the assignment; and certainly the assignor showed his good faith by the provision which allowed his creditors to have all the property which he had at the date of the instrument and at the time of the filing of the same in the clerk's office. In any event, if the assignment was otherwise valid, it would, by operation of law, transfer to the assignee whatever property the assignor had at the time of the filing of the assignment.

We have discussed all of the material errors assigned, and the result is that the order of the court below denying appellants' motion for a new trial is reversed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 60 N. W. 1077.)